IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BATASKI BAILEY,<br>    Plaintiff,<br><br>v.<br><br>METRO AMBULANCE SERVICES,<br>INC., D/B/A AMERICAN MEDICAL<br>RESPONSE, INC.,<br>    Defendant. | Civil Action No.<br>1:16-cv-04440-AT-JKL<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Plaintiff Bataski Bailey ("Plaintiff" or "Mr. Bailey") hereby files his Response in opposition to Defendant Metro Ambulance Services, Inc., d/b/a American Medical Response, Inc.'s ("Defendant") Motion for Summary Judgment. For the reasons set forth herein, summary judgment should be denied on all counts.[1]

---

[1] Although Plaintiff's Complaint includes a claim for race discrimination under Title VII, Plaintiff consents to withdraw that claim. Thus, this Response will address only the religious discrimination and retaliation claim under Title VII and the § 1981 retaliation claim as part of the Title VII analysis (as Defendant has done).

## II.   FACTS

Plaintiff hereby incorporates by reference his Response to Defendant's Statement of Undisputed Material Facts ("RSUMF") and his Statement of Additional Material Facts ("SAMF"), filed herewith.

## III.   SUMMARY JUDGMENT STANDARD

Because Defendant asks the Court to usurp the role of the jury and make credibility determinations, it is necessary to review the summary judgment standard in greater-than-usual detail. Summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must show that "everything in the record . . . demonstrates that no genuine issue of material fact exists." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986). Genuine issues of fact are those where the evidence is such that a reasonable jury could return a verdict for the non-movant. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  In other words, if a reasonable juror could find in Mr. Bailey's favor, summary judgment must be denied.

"[E]valuating witness credibility and weight of the evidence" are "the ageless role of the jury."  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999).  As the Supreme Court put it: "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) ("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). For this reason, when a court rules on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255. The Court "may not weigh conflicting evidence or make credibility determinations," nor decide  "disputed issues of fact, the court may not decide them; rather, [it] must deny the motion and proceed to trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

Finally, "a case should be put to the jury" even if such disputed issues are "created solely by the testimony of a party."  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).  A party's testimony may not be disregarded at summary judgment simply because the Court may consider it "self-serving." *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) ("an affidavit which satisfies [Fed. R. Civ. P. 56] may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated.")  "[T]he law allows that '[i]nterest and truth may go together.'" *Feliciano*, 707 F.3d at 1253

(*quoting Davis v. Cent. R.R.*, 60 Ga. 329, 333 (1878)).

## IV.   A REASONABLE JURY COULD FIND THAT METRO ABULANCE SERVICES ENGAGED IN UNLAWFUL RELIGIOUS DISCRIMINATION.

The rule for a disparate treatment-claim based on a failure to accommodate is straightforward: "[a]n employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 135 S. Ct. 2028, 2033 (2015). The employer is required to reasonably accommodate an employee, short of undue hardship. *Id.* at 2031; *Patterson v. Walgreen Co.,* 727 F. App'x 581, 585 (11th Cir. 2018). Title VII does not demand mere neutrality with regard to religious practices – requiring instead that employees with religious accommodation claims be extended favorable treatment. *Abercrombie,* 135 S. Ct. at 2034.

The FIRST approach requires that the Plaintiff show (1) a bona fide religious belief, (2) notice, and (3) an adverse employment action. *Patterson*, 727 F. App'x at 585–86; *Camara v. Epps Air Serv., Inc.,* 292 F. Supp. 3d 1314, 1326 (N.D. Ga. 2017). Once the *prima facie* case is presented, the burden shifts to the employer to offer a reasonable accommodation or a failure connected to an undue hardship. *Patterson*, 727 F. App'x at 585–86. There is no dispute regarding sincerity, notice, or the absence of an undue hardship. (Doc. 59-1, p. 12). The only

dispute is whether the Defendant terminated Mr. Bailey based on an alleged falsification on his application and whether Mr. Bailey was offered a reasonable accommodation. The alleged falsification will be discussed in SECTION V.B.i. and the reasonable accommodation will be taken up in SECTION IV.A.

The SECOND approach requires that the employee show that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment action; and (4) the employer treated similarly-situated employees outside his class more favorably or replaced him with someone outside her protected class. *MackMuhammad v. Cagle's Inc.,* 379 Fed. Appx. 801, 804 (11th Cir. 2010). Once the employee makes out his *prima facie* case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment decision, which the employee can show is pretextual. *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999).

Defendant's argument relies on an outdated formulation of the old *McDonnell Douglas* framework for proving discrimination and retaliation with circumstantial evidence. To wit: Defendant argues Mr. Bailey cannot prove the fourth prong of the *prima facie* case because he cannot prove a similarly situated comparator outside his protected class was treated more favorably.

However, under Eleventh Circuit precedent, "[e]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "Rather, the plaintiff will <u>always</u> survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the discriminatory intent." *Id.* (emphasis added). The circumstantial evidence creates a triable issue if, "viewed in the light most favorable to the plaintiff, [the record] presents a convincing mosaic . . . that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. Under this "convincing mosaic" standard, "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Id.* "This, of course, is perfectly logical. Not every employee subjected to unlawful discrimination will be able to produce a similarly situated comparator" plus "a proper comparator simply may not exist in every work place." *Lewis v. City of Union City*, 877 F.3d 1000, 1018 (11th Cir. 2017).

Unlike a traditional *McDonnell Douglas prima facie* case, evidence used to fit the "convincing mosaic" standard does not have to be shoehorned into particular categories. Any form of evidence will do. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256 (11th Cir. 2012) ("[w]hatever form it takes, if the

circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper"); *see also Lewis*, 877 F.3d at 1018 ( a convincing mosaic may be shown by evidence of, e.g., "suspicious timing [and] ambiguous statements" from "which an inference of discriminatory intent might be drawn"). This convincing mosaic model will form the foundational argument going forward. In particular, Plaintiff's Brief for Partial Summary Judgment (Doc 58-1, pp. 14–24) and SECTION V.B. below offers direct suspicious timing evidence that would allow a reasonable jury to infer pretext.

### A. Reasonable Accommodation

One of the other material issues in dispute is whether the Defendant offered Mr. Bailey a reasonable accommodation and whether he refused to accept.

### i. Mr. Bailey never refused to work on the NET-side

Mr. Bailey engaged in good faith, "bilateral cooperation . . . in the search for an acceptable reconciliation" between his religious needs and the "exigencies of the employer's business." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 69 (1986); *Patterson,* 727 F. App'x at 586.

From day one, Mr. Bailey sought to negotiate a religious accommodation on the emergency side as he had done with all prior employers, which the Defendant

in this case categorically refused. (30(b)(6) Dep. Exh. 4; Pl. Dep. 24:25-26:11).[2]

This refusal came even with Mr. Bailey's reassurances that his facial hair will not

cause an undue hardship given the other exceptions (e.g. "soul patches,"

"mustaches") – expressing a desire to handle the situation without "further action."

(Jackson Dep., Exh. 4; 30(b)(6) Dep. Exh 4, Exh. 9 at Bailey0048).

While Defendant alleges that Mr. Bailey was offered and refused a

reasonable accommodation, the record is unclear. Defendant was not even sure if

they offered Mr. Bailey an official accommodation, citing his failure to file "proper

documentation" in order to review his request. 30(b)(6) Dep. 178:17-24). Mr.

Bailey explained that he never refused to work on the NET-side – maintaining his

resolve to finish Orientation in order to show the Defendant that he was a qualified

paramedic *while* continuing to seek an accommodation. (Pl. Dep. 51:6-17, 55:9-20,

59:14-60:3, 62:14-63:21). None of this was resolved since Mr. Bailey was fired

before finishing Orientation. (Pl. Dep. 62:14-63:21; Bailey Separation Notice).

Even if Mr. Bailey refused any accommodation, this refusal goes to the

adverse action prong since he was fired for a failure to follow company policy that

categorically refused to accommodate anyone on the emergency side who had a

---

[2] After Bailey was terminated, Defendant asked DeKalb to accommodate future employee's grooming preferences (e.g. Bailey) so long as they can pass the safety tests and DeKalb agreed. (30(b)(6) Dep. 52:10-22, 71:20-25, 101:9-16). Mr. Bailey is now eligible for rehire and maintain his shaving profile. (30(b)(6) Dep. 71:3-11).

facial hear on their chin. This "absolute lack of effort" to accommodate Mr. Bailey on the emergency side can be viewed by a reasonable jury as evidence of religious discrimination. *See Rice v. U.S.F. Holland, Inc.,* 410 F. Supp. 2d 1301, 1310 (N.D. Ga. 2005) (citing to *EEOC v. Ithaca Industries, Inc.,* 849 F.2d 116, 118 (4th Cir.1988)).

ii.  <u>Defendant never offered a reasonable accommodation</u>

Even if this Court finds that the Defendant offered an accommodation, the accommodation was not reasonable because it denied him privileges of employment afforded to members outside of his protected class.

Under the disparate-treatment provision, employers are prohibited from discriminating with respect to "compensation, terms, conditions, or privileges of employment" because of an individual's religion. 42 U.S.C. § 2000e–2(a)(1). Since the purpose of the religious accommodation is to show the employee "favored treatment," it stands to reason that an accommodation cannot be reasonable when it places the employee in a worse position. *Abercrombie*, 135 S. Ct. at 2034. For example, an accommodation is not reasonable when it denies the employee privileges of employment otherwise available to members outside his protected

class.[3] An employer's unlawful act prevented by the statute (i.e. fail or refuse to hire or to discharge on the basis of religion) cannot be rectified through another act prevented by the same statute (i.e. discriminate with respect to privileges of employment). 42 U.S.C. § 2000e-2(a)(1).

The Supreme Court in *Abercrombie* struck down the efforts of an employer to use the store's neutral Look Policy to deny a plaintiff "privileges of employment." *Abercrombie*, 135 S. Ct. at 2034. This is precisely what we have in this case. Not from the standpoint of hiring, but from the standpoint of forward mobility. By categorically refusing to accommodate Mr. Bailey by mere *ipse dixit* of the Defendant, Mr. Bailey is constructively being forced to accept a path of limited forward mobility. As already stated, an accommodation is not reasonable when it involves an adverse employment action instead of favorable treatment.

The Eleventh Circuit has offered language to this effect in discussing a Title VII claim for race or national origin discrimination when an employee was passed over for a promotion. *Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 917–18  (11th Cir. 2018). In discussing the tangible adverse effect prong to show the employer's

---

[3] *Cf. Ansonia,* 479 U.S. at 71 (finding the unpaid leave accommodation unreasonable if it is doled out in a discriminatory fashion); *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994) (finding that although use of a portion of an employee's vacation entitlement may be reasonable, the requirement that an employee use all vacation to which he is entitled results in discrimination with respect to a privilege of employment); *Walker v. Alcoa, Inc.*, No. 4:06-CV-120, 2008 WL 2356997, at *11 (N.D. Ind. June 9, 2008) (finding an accommodation that required the plaintiff to use all of his leave time to be inherently unreasonable).

impact on "the terms, conditions, or privileges of [employment]," the court offered a number of avenues to consider. *Id.* at 920–21. Specifically, an employee can show that a "reasonable person in the circumstances" would find "the employment action [to] be materially adverse." *Id.* at 921. Examples could include: (1) showing that a reasonable person faced with the choice would prefer one position over the other, (2) showing improved "wages, benefits, or rank," (3) or showing "serious and material changes in the terms, conditions, and privileges of employment," such as the "prestige" of the position. *Jefferson*, 891 F.3d at 921; *see also Worley v. City of Lilburn*, 408 F. App'x 248, 250–51 (11th Cir. 2011) (reassignment to a less prestigious, less desirable position, and actions that affect an employee's eligibility for a merit pay increase may be seen by a reasonable juror as materially adverse).

Since the definition of what constitutes a reasonable accommodation is on a case-by-case basis, courts have suggested that a transfer may be reasonable so long as the new position is "reasonably comparable" with the old. *Beadle v. Hillsborough Cty. Sheriff's Dep't,* 29 F.3d 589, 592 (11th Cir. 1994); *Camara,* 292 F. Supp. 3d at 1327. Even if a transfer does not register as a demotion, it can still be an adverse action under Title VII. *Hinson v. Clinch Cty., Georgia Bd. of Educ.,* 231 F.3d 821, 828–29 (11th Cir. 2000) (transfer to a different position can be "adverse" if it involves a reduction in pay, prestige or responsibility). Thus,

comparing the two positions, if one is considered to be an adverse action than by its definition it cannot be "reasonably comparable." Defendant's argument for why the transfer was reasonable rests on the theory that the new position "did not involve any reduction in pay, hours, or skill." (Doc. 59-1, p. 15) Two of these – hours and skill – are disputed thus left to the jury to decide.[4] Both factors show that the two positions are not "reasonably comparable."

Regarding hours, by working on the NET-side, Mr. Bailey would be limited in his option for hours. (Pl. Dep. 50:16-23) Mr. Bailey was told that it would be difficult to make his Orientation hours as a part-time paramedic on the NET-side given availability of trucks and demand from other employees. (Pl. Dep. 52:3-54:11; 30(b)(6) Dep. 9:17-21). Given that significantly fewer trucks operate on the NET-side, it makes sense the Mr. Bailey would be limited in his scheduling options given the competition over fewer available shifts.  (30(b)(6) Dep. 9:17-21; Bailey Decl. ¶5; AMR Schedule).

Regarding skill, the NET-side requires less skill. (Pl. Dep. 26:23-27:1, 27:11-28:2, 51:1-5). The NET-side typically involves scheduled transporting of the elderly to and from their hospital, hospice, or home – which is why it is sometimes

---

[4] While the hourly-wage is the same, AMR does offer a $500 stipend to work the emergency side due to the high-volume of available shift and the lack of paramedics available to fill those shifts. (Bailey Decl. ¶4).

called "granny totes." (Pl. Dep. 26:23-27:1; 30(b)(6) Dep. 8:9-9:16). On the other hand, the emergency side requires an increased ability for: (1) dealing with strenuous situations; (2) multitasking; (3) finding methods to calmly work through problems; (4) being able to find treatments that best fit the patient within the scope of practice and protocol; and, (5) executing those treatments to the point where there's a positive outcome for the patient. (Pl. Dep. 27:11-28:2).

As a paramedic for over a decade, Mr. Bailey is uniquely qualified to compare the nuances between emergencies versus non-emergencies transfer and explain the forward mobility that each provides. In doing so, Mr. Bailey explained the position on the NET-side would limit his opportunity to interact with the community and limit his ability to gain knowledge in emergency medicine. (Pl. Dep. 50:16-23). In his declaration, he explains further that the NET-side "is not desired" since it involves the same mundane routine – day-in and day-out – and limits his opportunity for positional growth and learning new skills that are monetarily valuable in the future. (Bailey Decl. ¶6). On the other hand, the emergency side offers more opportunity for advancement in EMS since most supervisory positions require a minimum of 3-years emergency-side experience in a high volume market such as AMR DeKalb. (Bailey Decl. ¶7)  Finally, forcing Mr. Bailey into the NET-side left him with little to no opportunity to learn new

resource management skills. (Bailey Decl. ¶8).

In short, by working on the NET-side, Mr. Bailey would have diminished opportunity for the "promise of education and experience," deemed a material benefit by the Eleventh Circuit. *Jefferson*, 891 F.3d at 921. Accordingly, a "reasonable factfinder could conclude that [Mr. Bailey] suffered a loss of prestige and responsibility by being transferred" to the NET-side and it would be error to consider otherwise. *See Hinson*, 231 F.3d at 829–30.

While bearing a specious similarity, *Camara* can be readily distinguished since the plaintiff's subjective perceptions that the new position was "beneath her" were immaterial and the main reason the plaintiff took the original position ("face-to-face customer contact") would still be available in one of the "multiple alternative" offered to her. *Camara*, 292 F. Supp. 3d at 1328–29. Other distinguishing features included the court's finding that the plaintiff was not sincere in her concerns for customer engagement or her concerns that the new position lacked a career growth track. *Id.* at 1329, n. 21. None of these things apply to Mr. Bailey given the discussion above.

## V.    A REASONABLE JURY COULD FIND THAT METRO ABULANCE SERVICES ENGAGED IN UNLAWFUL RETALIATION

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected expression; (2) he suffered an adverse

employment action; and (3) there is some causal relationship between the two events. *Worley v. City of Lilburn,* 408 F. App'x 248, 250 (11th Cir. 2011); *Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000). Once a plaintiff can show this threshold evidence, the burden shifts to the defendant to offer a legitimate reason for the adverse employment action, which the employee can than show is pretextual *Sullivan v. Nat'l R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir. 1999).[5]

Defendant concedes the first two elements explicitly in their brief. (Doc. 59-1, p. 16). They also implicitly conceded the third element by agreeing that the Plaintiff has "mere temporal proximity." *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (mere temporal proximity, without more, must be "very close"); *Wideman v. Wal-Mart Stores, Inc.*, 141 F. 3d 1453, 1457 (11th Cir. 1998) (one month is sufficient close to establish nexus). As the Eleventh Circuit explained:   "close temporal proximity is sufficient for a reasonable jury to infer causation." *Shannon v. Bellsouth Telecommunications, Inc.,* 292 F.3d 712, 717 (11th Cir. 2002).

---

[5] Plaintiff has set forth in his Summary Judgment brief the retaliation argument—showing the absence of any material dispute as to the *prima facie* elements and showing how direct and indirect evidence defeat the Defendant's attempts to pass off the termination of Mr. Bailey as legitimate. (Doc. 58).

The only remaining question is proving the *but for* element, which (1) is not necessary to survive summary judgment; and, even if it is, (2) there is more than enough evidence for the jury to find that the Defendant acted unlawfully.

### A. Plaintiff does not need to show the "but for" causation standard

As explained in the above section, the "but for" standard is not a precondition under the convincing mosaic model. Considering the temporal proximity in this case, Mr. Bailey has done more than enough to satisfy the causation element by offering "sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (found seven weeks "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case"); *see also Quiles-Quiles v. Henderson,* 439 F.3d 1, 9 (1st Cir. 2006) (proof that harassment intensified shortly after employee filed EEO complaint is sufficient evidence from which the jury could infer causation).

### B. Defendant's legitimate explanation for termination is a pretext.

A number of courts have found a sufficient "convincing mosaic" to raise a jury issue of discriminatory intent from evidence that the employer's asserted justification is pretext. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1341

(11th Cir. 2011); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320-21 (11th Cir. 2012); *Zottola v. Anesthesia Consultants of Savannah, P.C.*, 169 F. Supp. 3d 1348, 1363-65 (S.D. Ga. 2013).

To show pretext, a plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision" by showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)). Proof that the employer's proffered reason is false permits the jury to infer the ultimate fact of discrimination, such that summary judgment is inappropriate. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Once the justification for termination is eliminated, discrimination becomes the next most likely explanation. *Id.* at 147. Thus, Defendant is wrong to argue that Plaintiff must prove – at the summary judgment stage – that Defendant's justification is pretext <u>and</u> that Defendant's real motive was

discrimination/retaliation.  For summary judgment purposes, the former allows the jury to infer the latter.

The record in this case offers more than enough evidence in to draw an inference that the Defendant sought to terminate Mr. Bailey for engaging in protected activity and only used the alleged falsification on his application as a pretext to cover their tracks. This evidence, read in favor of the nonmoving party, calibrates to show an unbroken chain of protected activities triggering subsequent adverse actions that culminate in the termination of Mr. Bailey. Before showing the chain of events, we address the application that the Defendant offers as the sole legitimate basis for terminating Mr. Bailey.

### i. Original Application is in Dispute

When Mr. Bailey applied to work for the Defendant, he submitted both, an electronic <u>and</u> a paper copy of his application. (Pl. Dep. 32:21-33:5, 38:6-12, 68:18-69:4). While using handwritten documentation methods has since been discontinued, it was still used by the company in 2014 as evidenced by the various performance documents drafted contemporaneous with Mr. Bailey's interview process. (30(b)(6) Dep. 74:12-22, Exh. 2). Defendant attested to this only after being shown the paperwork, admitting: "now that my memory is jogged . . . at the time that [he] was hired," the Defendant was "having people manually fill . . . out

and submit" paperwork. (30(b)(6) Dep. 74:12-22).

The electronic application that Defendant presents in this case is not the application Bailey personally submitted in 2014 – correspondingly, it does not bear his signature. (Pl. Dep. 34:1-4, 35:21-24, Exh. 1; Bailey 6/13/16 EEOC Letter). The application could not be the original because part of its content could not have been contemporaneously known to Mr. Bailey (e.g. page 2/8), where other parts do not reflect his original answer (e.g. page 5/8). (Pl. Dep. 34:5-35:3, Exh. 1). Mr. Bailey has consistently denied that the application relied on by the Defendant *is the same* application he submitted. (Bailey 6/13/16 EEOC Letter; Bailey 6/19/16 EEOC Letter; Pl. Dep. 34:2-35:12).

This material dispute is essential since the Defendant claims that Mr. Bailey answered "No" to the question: "Have you ever been fired or asked to resign from any job?" (Pl. Dep. 35:4-12). With the facts read in favor of the non-moving party, Mr. Bailey's original application indicated that he wrote "Yes" to the question, explaining further that the termination was wrongful and that his status is being restored. (Pl. Dep. 17: 24-25; 35:4-12; 30(b)(6) Dep. 70:1-9, 164:7-15, Exh. 11).

> ii. *Defendant engaged in a concentrated effort to find dirt in order to terminate Mr. Bailey.*

On his first day of employment (i.e. Orientation – January 12, 2015), Mr. Bailey sought a religious accommodation request for his shaving profile on the

emergency side. (Pl. Dep. 42:9-11, 60:4-6, Exh. 4; 30(b)(6) Dep. 96:21-24, 106:14-25, Exh. 4). There were no safety concerns to accommodate Mr. Bailey because he shaved his goatee to pass the safety tests after consulting with a spiritual advisor and passed a safety test during Orientation. (Pl. Dep. 23:17-24:17; 41:5-25, Exh. 5;(30(b)(6) Dep. Exh. 4).

His request for an accommodation was forwarded to the Defendant's in-house counsel, Mr. Rowekamp, who immediately launched an investigation into Mr. Bailey. (Rowekamp Dep. 18:7-14, 21:5-7, 26:10-15, 83:19-25; Pl. Dep. 54:19-24; 30(b)(6) Dep. 109:16-23, 110:11-16, 160:14-15, 161:15-18, Exh. 9 at Bailey0045-47). Prior to Mr. Rowekamp's involvement, nothing on Bailey's application raised red flags warranting a background check. (30(b)(6) Dep. 20:21-21-1; 33:20-34:13).

When the Defendant refused to accommodate Mr. Bailey, he filed a formal complaint (January 21, 2015) with the EEOC. (Bailey Dep. 62:6-13, 63:3-6, Exh. 5). The Defendant was well aware of this protected activity. (Pl. Dep. 62:6-13, 63:3-6, Ex. 5; 30(b)(6) Dep. Exh. 7; Rowekamp Dep. 26:10-15; 1/21-22/15 Emails). The next day, Defendant removed Mr. Bailey from Orientation and drove

him to administer another[6] drug test. (Bailey 1/22/15 Email; 30(b)(6) Dep. 75:25-76:15, Exh. 7; Pl. Dep. 42:21-43:1). Defendant's policy states that they will only drug test an employee on reasonable suspicion if they notice "physical, behavioral, or performance indicators of possible drug or alcohol use." (30(b)(6) Dep., Exh. 6). There was no reasonable suspicion in the record.

When the drug test came back clean, the Defendant went back to Mr. Rowekamp. (Moore/30(b)(6) Dep. 84:19-22, Exh. 7). On January 30, Mr. Bailey was brought into a meeting, where the Defendant accused him of falsifying his employment application based on the explicit instructions[7] of Mr. Rowekamp who uncovered alleged discrepancies while digging around Google and PACER.gov. (30(b)(6) Dep. Exh. 11; 30(b)(6) Dep. Exh. 7; Rowekamp Dep. 26:10-15). Mr. Bailey tried to explain to the Defendant that he disclosed his prior termination and that the company should contact his attorney who is resolving this matter. (30(b)(6) Dep. Exh. 11). As long as an employee discloses his prior termination, the

---

[6] Defendant asks this Court to discount Mr. Bailey's "self-serving unsupported assertion" that he already took a drug test prior to Orientation – as company policy requires. (Doc. 59-1, p. 19; 30(b)(6) Dep. 77:2-3; Jackson Dep. 9:13-15. The Eleventh Circuit explained the "unremarkable proposition that a fact-finder can choose to disregard a litigant's self-serving (and unsupported) trial testimony," however the court is in no place to do so at summary judgment[.]" *United States v. Stein,* 881 F.3d 853, 858 (11th Cir. 2018).

[7] Before Mr. Bailey was placed on leave, the Defendant's human resource manager walked him through a script created by Mr. Rowekamp that explicitly instructed her on how to use the information he found against Mr. Bailey – instructing her, further, not to inform him "how or where [she] obtained the [information.]" (January 26, 2016 Email; 30(b)(6) Dep. Exh. 11).

Defendant can hire him. (30(b)(6) Dep. 68:3-5, Exh. 9). Defendant had the necessary information to clarify this issue but chose not to contact Mr. Bailey's attorney, nor seek additional information regarding his prior termination. (30(b)(6) Dep. 84:19-22, 164:16-23, 166:22-24, Exh. 11; Rowekamp Dep. 56:9-17, 66:23-67:5). In fact, the decision to place him on unpaid administrative leave was – "for the most part" – already decided. (30(b)(6) Dep. 156:11-14, Exh. 11).

After being placed on unpaid administrative leave (January 30), Mr. Bailey engaged in a third protected activity (January 12, January 21) by filing a complaint with the Defendant alleging that his placement on leave was a "thinly veiled attempt to terminate [his] employment" for filing a complaint with the EEOC. (Pl. Dep. 62:6-13, 63:3-6, Exh. 5; 30(b)(6) Dep. Exh. 7, Exh. 8). The Defendant ignored Mr. Bailey's retaliation complaint, and instead terminated his employment five days after he was placed on administrative leave.  (Separation Notice). The information that Mr. Rowekamp dug-up after Mr. Bailey began voicing his complaints served as the <u>sole</u> justification for placing him on leave and ending his employment. (30(b)(6) Dep. 145:24-146:17, 149:16-20).

The Defendant does not dispute that Mr. Bailey's protected activities triggered or came immediately prior to the adverse actions. (30(b)(6) Dep. 136:25-137:12, 149:16-20). If the "but for" standard must be applied, this squarely shows

that Mr. Bailey's protected activities and the subsequent adverse actions are not "wholly unrelated." *Singleton v. Pub. Health Tr. of Miami-Dade Cty.,* 725 F. App'x 736, 738 (11th Cir. 2018); *see also Griffin v. GTE Fla., Inc.,* 182 F.3d 1279, 1284 (11th Cir. 1999) ("[a]t a minimum, [a plaintiff] must show that the adverse act followed the protected conduct"). Stated plainly: to prove the causation element for retaliation, "a plaintiff must prove that had [he] not complained, [he] would not have been fired." *Jefferson,* 891 F.3d at 924; *see also Lowe v. Exel,* 2018 WL 2016277, at *11 (N.D. Ga. Apr. 27, 2018) (the "but for" causation standard is met if the plaintiff can show "only that the adverse action would not have occurred in the absence of the [discriminatory or] retaliatory motive"). Pretending that the application was the reason for his termination is "unworthy of credence."

Finally, the law is clear that an *ad hoc* investigation following an employee's protected activity is, at a minimum, a question from which a jury can draw an inference of retaliation. Already briefed in part in Plaintiff's Motion for Partial Summary Judgment (Doc. 58, pp. 21-24), we focus specific on the language regarding the role of the jury.

For example, one court wrote that if a jury finds a "campaign of hatred" to "dig up dirt" on the plaintiff resulted from animus towards a protected group, it could reasonably find that the defendant acted against the plaintiff because of her

national origin and not her job performance. *See Ponce v. Cingular Wireless, LLC,* 2005 WL 5454213 at *3 (S.D. Fla. Nov. 17, 2005). Another, discussing materially adverse action, noted that a "jury could conclude that [employer's] investigation was conducted to dig up dirt on plaintiff" and that "a jury could find that plaintiff's complaint was not properly investigated." *Sharpe v. Utica Mut. Ins. Co.,* 756 F. Supp. 2d 230, 245 (N.D.N.Y. 2010).

Even more basic is the application of the standard for pretext that asks, "whether the employer believed the employee was guilty of misconduct." *Godwin v. Corizon Health,* 2018 WL 2017903, at *2 (11th Cir. Apr. 30, 2018). In this case, we know that the Defendant did not because Mr. Bailey told them! Defendant cannot appeal to "a good faith belief that [Mr. Bailey] violated a rule" when he gave the Defendant the requisite information from the start and asked them to investigate the issue, which the Defendant failed to do. *Id.* To suggest that Mr. Rowekamp began investigating Mr. Bailey "in the course of providing legal advice" (Doc. 59-1, p. 17) falls squarely in the realm of things the jury could find "unworthy of credence" for its inherit "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions[.]" *Jones v. Gulf Coast Health Care of Delaware, LLC,* 854 F.3d 1261, 1274 (11th Cir. 2017). The jury could also infer that the investigation into Mr. Bailey was nothing more than a veiled attempt

to circumvent requirements under federal law requiring "favored treatment" of an employee's religious needs by getting rid of the employee all together. *Abercrombie*, 135 S. Ct. at 2034.

Whatever veiled threat the company saw in Mr. Bailey's complaint on January 12, allowing an employer to dig around for measures to terminate an employee based on imputed fears of the threat of litigation *immediately after* a protected activity would create a chilling effect for all future employees seeking redress under Title VII. This is a textbook case for the reasons why retaliation statutes exist, i.e., to root out "those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 70 (2006).

## VI.    CONCLUSION

Considering all this, a reasonable juror could conclude that the proffered reason for Mr. Bailey's termination was a pretext for unlawful discrimination and retaliation for the claims above rendering summary judgment inappropriate.

Respectfully submitted this 30th day of July, 2018.

**BARRETT & FARAHANY**

/s/ *Benjamin A. Stark*
Benjamin A. Stark, Esq.
Georgia Bar No. 601867

1100 Peachtree Street NE, Suite 500
Atlanta, GA 30309
(404) 214-0120
Bstark@JusticeAtWork.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BATASKI BAILEY,
    Plaintiff,

v.

METRO AMBULANCE SERVICES,
INC., D/B/A AMERICAN MEDICAL
RESPONSE, INC.,
    Defendant.

Civil Action No.
1:16-cv-04440-AT-JKL

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed ***Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Jarrett Michael Dean Spence
jspence@constangy.com

Steven Woodrow Moore
smoore@constangy.com

Respectfully submitted this 30th day of July, 2018.

**BARRETT & FARAHANY**

/s/ *Benjamin A. Stark*
Benjamin A. Stark, Esq.
Georgia Bar No. 601867